Michael SALAZAR, Appellant,

v.

STATE of Missouri, Respondent.

No. 24213.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 6, 2001.

Motion for Rehearing or Transfer Denied
Dec. 27, 2001.

Matthew J. O'Connor, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, C.J.

PER CURIAM.

Michael Salazar ("Movant") appeals from a judgment of the Circuit Court of Lawrence County denying his Rule 29.15 motion to vacate, set aside or correct a prior judgment and sentence for two

counts of murder in the first degree, § 565.020, RSMo 1994.[1] In his criminal trial, Movant received two consecutive life terms without eligibility for parole. *See State v. Salazar*, 978 S.W.2d 469 (Mo.App. 1998).

Movant raises four points of motion court error. In his first three points he asseverates that the trial court erred in overruling his post-conviction relief motion because his trial attorneys were ineffective by failing to: (1) file a motion to dismiss based on the State's failure to preserve an audio-taped confession of Movant; (2) request a mistrial based on jury misconduct; and (3) interject the theory of self-defense or request a self-defense instruction. In his fourth point Movant also alleges the motion court erred in denying his motion for post-conviction relief because his appellate counsel failed to raise an argument on appeal relating to the introduction of speculative and inadmissible testimony by Dr. Spindler, relating to one of the victim's wounds being consistent with wounds produced by a screwdriver. None of these points has merit.

■■■■ This Court will not disturb the judgment of the motion court denying post-conviction relief unless we ascertain that its findings and conclusion are clearly erroneous. *Cardona–Rivera v. State*, 33 S.W.3d 625, 626 (Mo.App.2000). " 'We will find the motion court's determination clearly erroneous only if a review of the entire record leaves a definite and firm impression that a mistake has been made.' " *Id.* (quoting *Sitton v. State*, 17 S.W.3d 917, 920 (Mo.App.2000)). "Movant must demonstrate that there is a reasonable probability that, absent the alleged

error, the jury would have had a reasonable doubt as to guilt." *Id.*

A complete review of the facts can be found in *Salazar*, 978 S.W.2d at 470–71. Briefly, Movant shot Brian and Ronald Yates ("Yates brothers") in a garage at a residence in Verona, Missouri, on January 1, 1996.[2] The wounds then inflicted upon the Yates brothers were such that they could have survived. After shooting the Yates brothers, Movant and two other individuals, Brandon Hutchison ("Hutchison") and Freddy Lopez ("Lopez"), dragged the victims across the garage and loaded them into the trunk of a car and left the residence. *Id.* at 470. Prior to leaving the garage, on instructions from Lopez, Movant retrieved a .22 caliber revolver and ammunition. *Id.* After driving five or six miles, one or both of the Yates brothers began kicking against the back seat. Hutchison, who was driving, pulled down a farm road and stopped. "Hutchison got out of the car, and Defendant followed. One brother was pulled from the trunk and his head was exposed, and Hutchison shot him twice in the head with a .22 caliber pistol." *Id.* "[Movant] leaned against the trunk while the victim was shot." *Id.* Movant and Hutchison then pulled the first brother out of the trunk and threw him on the side of the road. They then "dragged the second brother from the trunk so that his head was exposed and [Movant] observed Hutchison shooting him in the head a number of times." *Salazar*, 978 S.W.2d at 470–71. "[Movant] and Hutchison then dragged the second brother from the trunk and threw him off the side of the road with the other victim." *Id.* at 471. The Yates brothers

---

1. All rule references are to Missouri Court Rules 2001.

2. Movant did not testify at trial. However, during the PCR hearing Movant testified he

shot Brian Yates because he feared that Brian Yates was coming at him to attack him with a screwdriver.

died as a result of being shot in the head. *Id.*

Movant then left the area, but turned himself in to authorities in California five days later. While in California, Movant spoke with two investigators, Detective Aleshire and Detective Wegrzyn, from the Lawrence County Sheriff's Department. He confessed and signed a statement outlining his role in the deaths of the Yates brothers. Detective Aleshire began to record Movant with a tape-recording device at some point during their discussion. However, upon checking the tape at a later date, Detective Wegrzyn found it to be blank and could not produce a tape of the conversation when requested by Movant.

In his first point, Movant alleges that his trial attorneys were ineffective because they failed to "file a motion to dismiss based on the lost or destroyed audio tape recording of the interrogation of [Movant]." Movant claims that he repeatedly asked his trial counsel to look into the matter of the missing tape and further avers that the tape was a crucial piece of evidence that would have helped his case.

■■■■ To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that his trial counsel was ineffective by failing to exercise the customary skill and diligence required of a reasonably competent attorney in similar circumstances, and that Movant was prejudiced as a result of the ineffectiveness. *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998); *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Cardona–Rivera,* 33 S.W.3d at 627–28. Two separate requirements must be shown in this analysis. First, Movant must show that counsel was ineffective, and second, Movant must show that he was prejudiced as a result. *Cardona–Rivera,* 33 S.W.3d at 628. "If either of these

requirements is not met, then a claim for ineffective assistance will fail." *Id.*

■■■■ This Court may determine whether Movant suffered any prejudice without first looking to whether the conduct of Movant's trial counsel was deficient. *Sitton,* 17 S.W.3d at 920. " 'If it is simpler to dispose of a claim of ineffective assistance of counsel on the ground of lack of sufficient prejudice, that course should be followed.' " *Id.* (quoting *State v. Sullivan,* 935 S.W.2d 747, 761 (Mo.App.1996)).

■■■■ In applying this test to the facts of the case before us, we consider whether Movant was prejudiced by his trial attorneys' purported failure to file a motion to dismiss based upon the lost tape. At the motion hearing, Movant attempted to establish that the investigators acted in bad faith by not turning over the tape as evidence.

■■■■ "The defendant must show bad faith to receive relief where evidence potentially helpful to the defendant has been destroyed." *State v. McNaughton,* 924 S.W.2d 517, 525 (Mo.App.1996). "Failure to preserve potentially useful evidence, without this showing of bad faith, does not constitute denial of due process." *Id.* "The state's constitutional duty to preserve evidence is limited to evidence that might be used in the defendant's defense, and its exculpatory value must have been apparent before it was destroyed." *Id.*

■■■■ Movant testified that during the interview, the investigators played back a portion of the tape to him. However, Detective Wegrzyn testified at the evidentiary hearing that he never played the tape back for Movant and when he later checked the tape, he found it to be blank. Nothing had been recorded on it. He stated that because the tape was blank, he put it back in the area where other tapes

are kept and did not mark it as evidence. In its finding of facts, conclusions of law and judgment, the motion court found the testimony of Detective Wegrzyn to be credible. We defer to the motion court in its determination of the credibility of the evidence and witnesses at the evidentiary hearing. *See Henderson v. State*, 32 S.W.3d 769, 770 (Mo.App.2000). While it may have been more prudent for Detective Wegrzyn to have marked the blank tape and later presented it, the fact that the tape in question was blank, without more, does not in and of itself show bad faith on the part of the state. Movant has failed to prove bad faith.

■ The motion court also found that "movant has failed to show ... prejudice, *i.e.* that but for the absence of the tape, the result of the proceeding would have been different, because the tape would not have revealed anything substantially different from movant's incriminating written statement." [3] Under these circumstances a motion to dismiss would have been meritless. Trial counsels cannot be faulted for making a non-meritorious objection. *See State v. Kreutzer*, 928 S.W.2d 854, 876 (Mo. banc 1996). Point denied.

■ In his second point, Movant posits that his trial attorneys were ineffective because they failed to request a mistrial upon learning that the jury had purportedly talked about the case prior to submission of the case to the jury. Movant premises his belief that his trial jurors discussed the case among themselves prior to its submission to them on the basis that during Movant's trial the court received a note from the jury asking whether "we" [the jury] could take notes during the trial.

Movant asserts that the jurors' use of the word "we" in their message demonstrated that the jurors discussed the case before it was submitted to them, and that this constituted jury misconduct, warranting a mistrial. *See State v. Chunn*, 701 S.W.2d 578, 587 (Mo.App.1985)("[I]f jury misconduct takes place during the progress of a felony trial and before the case is submitted, the verdict must be set aside unless the State affirmatively shows that the jurors were not subjected to improper influences.").

■ We initially observe that Movant did not plead specific facts in his post-conviction relief motion in support of this claim. A movant must plead specific facts in a Rule 29.15 motion in order to be entitled to relief. *White v. State*, 939 S.W.2d 887, 893 (Mo. banc 1997). Movant also failed to produce any evidence, as opposed to conclusions, that juror misconduct of any kind occurred.

■ At trial the jury was admonished twice within three hours before the alleged incident not to discuss the case among themselves. In our review of the evidence, it appears that the jury merely requested pens and paper to take notes. "[W]e are unwilling to assume, from the note alone, that the jury had embarked on a discussion of [Movant's] guilt or innocence." *Chunn*, 701 S.W.2d at 587. Movant does not cite nor does our independent research find a Missouri case in which jury misconduct has been inferred from an incident similar to the one alleged by Movant. *See id.* Because Movant has failed to show that any juror misconduct occurred, any motion for mistrial proposed by Movant's

---

**3.** The record shows that at trial Detective Wegrzyn was thoroughly and effectively cross-examined about numerous statements attributed to Movant that Detective Wegrzyn did not include within the written report of the interview. At most, the details that Movant claims would have been brought to light by the tape were merely impeaching, and not exculpatory.

attorneys would have been useless. Trial counsel cannot be faulted for failing to file a meritless motion for mistrial. *See State v. Clemons*, 946 S.W.2d 206, 231 (Mo. banc 1997). Point denied.

In his third point, Movant contends his attorneys were ineffective because they failed to "introduce the theory of self-defense or request a self-defense instruction." Movant claims that the evidence supported an instruction on self-defense and his trial counsels' failure to pursue this avenue prejudiced his case.

 In reviewing the record, we discern that a claim of self-defense simply did not lie. While Movant may have had an argument for self-defense arising out of his involvement during the initial shootings in the garage, during the *relevant time period* surrounding the charged killings, Movant cannot plausibly show that he acted in self defense.

> Deadly force may be used in self-defense only when there is (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

*State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984).

 Here, the record reveals that each of the victims were unarmed, wounded, and were dragged from the trunk of a car in order to be shot in the head. Movant cannot credibly assert that he seriously feared bodily injury or death at the hands of these two unarmed men trapped in the trunk of a car. Under these circumstances, the actions or inactions of Movant's trial counsel cannot be held as deficient for failing to pursue a theory or defense not supported by the evidence. Just as counsel cannot be faulted for making a nonmeritorious objection, *Kreutzer*, 928 S.W.2d at 876, Movant's trial attorneys cannot be faulted for failing to request an instruction that had no evidentiary support. Point denied.

In his final point, Movant argues that his appellate counsel was ineffective for failing to brief an issue regarding purportedly speculative and inadmissible testimony from Dr. Spindler that one of the victim's wounds were consistent with wounds produced by a screwdriver. Movant asserts that this type of evidence created a presumption that Movant had assaulted the Yates brothers with the screwdriver during the fracas in the garage resulting in prejudice to Movant.

 "The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice." *Helmig v. State*, 42 S.W.3d 658, 682 (Mo.App.2001). In order for Movant to be entitled to relief, he must show that the alleged error " 'not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice.' " *Denson v. State*, 31 S.W.3d 166, 178 (Mo.App.2000) (quoting *Moss v. State*, 10 S.W.3d 508, 514–15 (Mo. banc.2000)). Appellate counsel is not under a duty to present all meritorious issues and may strategically decide to discard some arguments in favor of other superior arguments. *Helmig*, 42 S.W.3d at 682; *Mallett v. State*, 769 S.W.2d 77, 83–84 (Mo. banc 1989).

 In our review of the record, Dr. Spindler testified at Movant's criminal trial that injury to one of the victims was

consistent with stab wounds of a screwdriver. However, Dr. Spindler also testified that he was not trained in forensics. This mitigated his statements regarding the stab wounds. More importantly, as the motion court also observed from the evidence, the "mark or marks on one of the victims that appeared to be caused by a screwdriver did not cause death." Not being an element of the crime charged in the underlying criminal trial, and considering the totality of the evidence, we do not discern that Dr. Spindler's testimony so prejudiced Movant as to have required a reversal of his conviction. "Error which in a close case might call for a reversal may be disregarded a harmless when the evidence of guilt is strong." *State v. Umfress*, 50 S.W.3d 880, 885 (Mo.App.2001) (quoting *State v. Roberts*, 838 S.W.2d 126, 131 (Mo.App.1992)). Movant's appellate counsel's ostensible failure to raise this matter on appeal was not so egregious as to amount to a manifest injustice or a miscarriage of justice. Point denied.

The judgment of the motion court is affirmed.